ORIGINAL

# In the United States Court of Federal Claims

No. 16-1115C

(Filed: December 8, 2016)

FILED
DEC - 8 2016
U.S. COURT OF FEDERAL CLAIMS

**(NOT TO BE PUBLISHED)**

*********************************

**CLIFTENA CARTER,**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

*********************************

Cliftena Carter, *pro se*, Fayetteville, Tennessee.

Renee A. Burbank, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff Cliftena Carter brings suit on behalf of Carter Safety Consultants, Inc. ("CSCI"), the company for which she serves as president and CEO. CSCI had a contract with the United States Army Corps of Engineers ("Corps of Engineers" or "Corps") to perform project scheduling support services. The total estimated cost of the contract was $619,144.40, and in March 2013 the Corps paid CSCI $509,601.80, based on the value of the total work performed. Ms. Carter alleges that CSCI is owed $109,542.60, the difference between the amount paid to CSCI for services rendered and the service estimates provided in the contract.

Pending before the court is the government's motion to dismiss pursuant to Rules 41(b), 83.1(a)(3), and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC").

7014 1200 0000 9093 9942

## BACKGROUND

Plaintiff is the president and CEO of CSCI, an "Economically Disadvantaged Women-Owned Small Business." Compl. at 1. In 2007, the Corps of Engineers awarded a three-year service contract to CSCI under Section 8(a) of the Small Business Act to provide "information and project scheduling support." Compl. Tab 3 (Contracting Officer's Final Decision (Apr. 21, 2016)) at 1; *see also* Compl. Tab 4(3) (Contract No. W912P8-07-D-0050).[1]

After the expiration of the original contract in September 2010, the Corps awarded CSCI a follow-on contract for the continued provision of the same services. Compl. Tab 3, at 5; *see also* Compl. Tab 4(2) (Contract No. W912P8-10-P-0255). CSCI provided estimated costs for the second contract, which were accepted by the Corps as estimates and incorporated into the contract. Compl. Tab 3, at 2-5; Compl. Tab 4(2), at 3-4. The estimates were provided on an hourly basis, in accord with the indefinite-delivery/indefinite-quantity nature of the original contract. *See, e.g.*, Compl. Tab 3, at 3. In the final contract, the Corps of Engineers "mistakenly" included the term "[f]irm-fixed [p]rice" rather than "indefinite delivery/indefinite quantity" or an equivalent term, and used the term "[l]ump [s]um" rather than "[h]ours" for the unit of payment for each contract line-item. Compl. Tab 3, at 5; Compl. Tab 4(2), at 3. Nonetheless, the contract incorporated by reference provisions of the Federal Acquisition Regulations ("FAR") that apply to indefinite-delivery/indefinite-quantity contracts and made no reference to regulations regarding firm-fixed-price contracts. *See* Compl. Tab 3, at 5-8; Compl. Tab 4(2), at 15-16 (incorporating 48 C.F.R. § 52.216-22). CSCI was also required to submit invoices and timesheets to the Corps during the course of contract performance, a requirement with which CSCI complied. Compl. Tab 3, at 11.

During contract performance, CSCI and the Corps issued four bilateral modifications of the contract. Compl. Tab 3, at 9-11. Each modification included updated estimated costs. Compl. Tab 3, at 9-11. In the final modification, which extended contract performance through March 27, 2013, the estimated cost of contract performance was $619,144.40. Compl. Tab 3, at 11.

At the conclusion of contract performance, CSCI submitted a final invoice to the Corps of Engineers, stating that "[c]umulative [b]illings" under the contract totaled $509,601.80. Compl. Tab 3, at 12. The Corps processed payment to CSCI in this amount on May 6, 2013. Compl. Tab 3, at 12; *see also* Compl. Tab 4(8) (Contractor's Release (May 3, 2013)). When the Corps contacted CSCI in December 2013 to formally close out the contract, Ms. Carter (on behalf of CSCI) responded with a request for "final payment" measured by the difference between the estimated costs in the contract and CSCI's cumulative billings, amounting to $109,542.60. Compl. Tab 3, at 12-13. CSCI maintained this request in multiple communications with the Corps throughout 2014, but did not provide any documentation to show that additional services had been rendered for the claimed amount. *See, e.g.*, Compl. Tab 3, at 13-16; Compl. Tab 9 (Request Against Contract No. W912P8-10-P-0255 For Equitable Adjustment (Nov. 12, 2014)); Compl. Tab 10 (Request Against Contract No. W912P8-10-P-0255 For Equ[it]able Adjustment (Aug. 11, 2014)).

---

[1]An extensive set of exhibits filed with the complaint were designated by tabs.

On February 8, 2016, CSCI submitted to the Corps a request for a Contracting Officer's Final Decision. *See* Compl. Tab 4 (Request for Final Payment, Contract No. W912P8-10-P-0255 (Feb. 8, 2016)). In this request, CSCI asserted that it was owed the difference between the estimated costs in the contract and the costs ultimately billed because the contract was a firm-fixed-price/lump-sum contract. Compl. Tab 3, at 16-17. The contracting officer issued her decision on April 21, 2016. Compl. Tab 3. She determined that the mere mention of "[f]irm [f]ixed [p]rice" on one page of the contract was insufficient to render it a firm-fixed-price/lump-sum contract. Compl. Tab 3, at 17. In her view, the full text of the contract, the course of dealing between CSCI and the Corps, and the circumstances surrounding the contract showed that it was an indefinite-delivery/indefinite-quantity contract. Compl. Tab 3, at 17-20. The contracting officer concluded that the Corps was thus only obligated to pay CSCI for the services it actually rendered and billed, regardless of the fact that the cost of services ultimately performed was less than the estimated cost stated in the contract. Compl. Tab 3, at 21. Therefore, the contracting officer denied CSCI's claim. Compl. Tab 3, at 22.

Following the Contracting Officer's Final Decision, Ms. Carter filed suit in this court on September 6, 2016.[2] In her complaint, she reasserts CSCI's prior contention that the contract with the Corps was a firm-fixed-price/lump-sum contract and thus that the company is owed the difference between the cost of services rendered and the estimated cost stated in the contract. *See generally* Compl.

**ANALYSIS**

RCFC 83.1(a)(3) states that "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." Thus, a *pro se* plaintiff cannot represent a corporation; a corporation must be represented by an attorney to proceed in this court. This "has been the law [of the federal courts] for the better part of two centuries." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) (citing *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 829 (1824)). And "[t]he court is not free to waive this rule, even in cases of severe financial hardship." *Talasila, Inc. v. United States*, 240 F.3d 1064, 1066 (Fed. Cir. 2001) (internal quotation marks and citations omitted); *see also Schickler v. United States*, 54 Fed. Cl. 264, 267-68 (2002) ("There are no exceptions to this clear and unqualified rule.") (quoting *Talasila*, 240 F.3d at 1067), *appeal dismissed*, 70 Fed. Appx. 584 (Fed. Cir. 2003). If a corporation does not obtain counsel, "the ordinary remedy is to dismiss [the] complaint for lack of prosecution." *Balbach v. United States*, 119 Fed. Cl. 681, 683

---

[2]On April 20, 2016, the day before the issuance of the Contracting Officer's Final Decision, Ms. Carter submitted a letter to Senator Bob Corker requesting assistance with her complaints against the Corps. *See* Compl. Tab 2 (Letter from Cliftena Carter to Sen. Bob Corker (Apr. 20, 2016)). This letter was forwarded to the Corps of Engineers on Ms. Carter's behalf. A representative of the Corps responded to Senator Corker's office on June 2, 2016, explaining that CSCI had been paid $509,601.80 for services rendered and that the company was not entitled to additional payments based solely on the estimated costs in the contract. Compl. Tab 1 (Letter from Laura J. Eichhorn, Principal Assistant Responsible for Contracting – Atlanta, U.S. Army Corps of Engineers to Sen. Bob Corker (June 2, 2016)).

(2015) (citing *Alli v. United States*, 93 Fed. Cl. 172, 177 (2010), *appeal dismissed*, 447 Fed. Appx. 223 (Fed. Cir. 2011)).

Although Ms. Carter is listed as the plaintiff in this case, the real plaintiff-in-interest is CSCI. This suit was filed to recover payments allegedly owed to CSCI based on a contract between the Corps of Engineers and CSCI. Ms. Carter is not a party to this contract in her individual capacity, *see* Compl. Tab 4(2), at 1, so she cannot sue the government on the contract as an individual. *See Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The government consents to be sued only by those with whom it has privity of contract.") (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550-52 (Fed. Cir. 1983)). Ms. Carter also is not an attorney, and therefore cannot represent CSCI pursuant to RCFC 83.1(a)(3), even though she is the president and CEO of the corporation. *See Balbach*, 119 Fed. Cl. at 683 (dismissing a *pro se* suit brought by the owner-operator of a corporation regarding a contract between the corporation and the federal government); *Affourtit v. United States*, 79 Fed. Cl. 776, 779-80 (2008) (same). Consequently, without a notice of appearance filed in this case by an attorney admitted to practice before this court, plaintiff's complaint must be dismissed for lack of prosecution pursuant to RCFC 41(b). *See Ogunniyi v. United States*, 124 Fed. Cl. 525, 530 (2015) ("To the extent that [plaintiff's] complaint is a veiled attempt to allow him to argue on behalf of [his company] and seek essentially a second appeal or review of the contracting officer's decision against [the company] under RCFC 83.1(a)(3), absent a notice of appearance filed by an attorney admitted to this court, plaintiff's complaint must be dismissed."), *aff'd*, 655 Fed. Appx. 842 (Fed. Cir. 2016).[3]

## CONCLUSION

For the reasons stated, the government's motion to dismiss Ms. Carter's complaint is GRANTED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Judge

[3]Additionally, on November 21, 2016, the court issued an order to show cause why the case ought not to be dismissed because plaintiff had neither paid the filing fee nor filed a motion to proceed *in forma pauperis*. Plaintiff did not respond to this order and has failed to pay the filing fee. Thus, the complaint is also dismissed on this basis pursuant to RCFC 41(b) and 77.1(c).